UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

SYNGENTA CROP PRODUCTION, INC.
and GERLING AMERICA INSURANCE
COMPANY,                                                                      PLAINTIFFS


v.                                                          CIVIL ACTION NO. 3:06-CV-84-S


DOYLE BRANT, INC., BS XPRESS, INC.,
THOMAS CHEEK, and LESCO, INC.,.                                 DEFENDANTS


and


DOYLE BRANT, INC., BS XPRESS, INC.,
and THOMAS CHEEK                                      THIRD PARTY PLAINTIFFS


v.


R.C. CAPARELLI,
in her capacity as TRUSTEE                            THIRD PARTY DEFENDANT


## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Lesco, Inc. ("Lesco"), for

summary judgment (DN 41).

## BACKGROUND

This action arises from a May 20, 2003, tractor trailer accident that occurred on the ramp

from Interstate 71 to the Gene Snyder Freeway in Jefferson County, Kentucky.  The tractor trailer

was transporting eleven containers of Diazinon, a pesticide manufactured by plaintiff Syngenta Crop

Protection, Inc. ("Syngenta"), from Lesco's facility in Ohio to Syngenta's facility in Alabama. The accident resulted in the release of the Diazinon onto nearby property. The Diazinon was shipped by Lesco and was being transported by defendant BS Xpress, Inc, an affiliate of defendant Doyle Brant, Inc. (referred to collectively as "DBI/BSX"). DBI/BSX was transporting the Diazinon pursuant to a contract it entered into with Syngenta. Defendant Thomas Cheek ("Cheek"), a truck driver for DBI/BSX, was the driver of the tractor trailer (DBI/BSX and Cheek are referred to collectively as "the Carrier Defendants").

Syngenta undertook responsibility for cleaning up the spill and, along with its insurer, Gerling America Insurance Company (collectively "the Plaintiffs"), brought this action against the Carrier Defendants and Lesco seeking indemnity for the costs it has incurred. R.C. Caparelli, in her capacity as Trustee for the benefit of George W. Frazier ("Frazier") entered the action and asserted claims against Syngenta, the Carrier Defendants, and Lesco. Frazier owned property that was contaminated by the Diazinon spill and alleges that he also incurred costs as a result of the spill.

The Plaintiffs and Frazier contend that Lesco is responsible for some or all of their costs, alleging that Lesco negligently loaded the trailer by placing the Diazinon containers down the center of the trailer with no holding supports on the sides. They allege that this negligent loading caused Cheek to lose control on the ramp and resulted in the Diazinon spill. Lesco has moved for summary judgment as to the claims asserted against it on the basis that the Carrier Defendants had a non-delegable duty to ensure that the Diazinon was properly secured.

## DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v.*

- 2 -

*S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Under Kentucky law, actionable negligence requires the plaintiff prove: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003) (citations omitted). Lesco is alleged to have assumed responsibility for loading the Diazinon containers. Lesco disputes that it negligently loaded the tractor trailer, but argues that regardless of whether it was negligent, it is absolved from liability on the basis that the Carrier Defendants operated under a non-delegable duty to ensure that the Diazinon was properly loaded on the trailer.

In *U.S. v. Savage Truck Line, Inc.* 209 F.2d 442 (4th Cir. 1953), the Fourth Circuit Court of Appeals described the majority rule applied in allocating responsibility between the shipper and the carrier for improper loading as follows:

- 3 -

> When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for defects which are latent and concealed and cannot be discerned by ordinary observation by the agent of the carrier; but if the improper loading is apparent, the carrier will be liable notwithstanding the negligence of the shipper.

209 F.2d at 445.  The "*Savage* rule" is consistent with Kentucky law.  *See Pierce v. Cub Cadet Corp.,* No. 87-5936, 875 F.2d 866, *10 (6th Cir.1989) ("we believe [the rule described in *Savage*] comports with Kentucky's jurisprudence on negligence and contributory negligence").[1]

Lesco contends that the alleged defect in its loading of the Carrier Defendant's tractor trailer was apparent, not latent and concealed.  According to Lesco, Cheek actually discovered that Lesco had loaded the trailer by placing the Diazinon containers down the center of the trailer with no supports on the sides and that he was aware of the potential hazards posed by such manner of loading.  Lesco therefore contends that, under the "*Savage* rule," the Carrier Defendants are solely liable for any losses incurred by the Plaintiffs and Frazier that are determined to be the result of its negligence in loading the trailer.

## I.  Applicability of the *Savage* Rule

Frazier contends that Lesco cannot rely on the *Savage* rule to bar his negligence claim.  Frazier argues that the *Savage* rule is applicable only to those claims between the shipper and the carrier for damage related to improper loading and not to claims by third parties to the shipping

---

[1] The policy behind the *Savage* rule reflects the understanding in the trucking industry, as indicated in the Department of Transportation regulations on the subject, that carriers should have the final responsibility for the loads they haul.  *See* 49 C.F.R. § 392.9 (2007).  Applying Kentucky law, the Sixth Circuit Court of Appeals noted that 49 C.F.R. § 392.9 is indicative of the allocation of liability as between a carrier and a shipper.  *Rector v. Gen. Motors Corp.*, 963 F.2d 144, 147 (6th Cir. 1992).

- 4 -

relationship.  We agree.  In *Decker v. New England Public Warehouse, Inc.*, 749 A.2d 762 (Me. 2000), the Supreme Judicial Court of Maine stated that the *Savage* rule extends the trucking industry's understanding that carriers should have the final responsibility for their loads to negligence suits involving carriers and shippers. 749 A.2d at 767.  In *Decker*, a carrier asserted a claim against a shipper for allegedly causing an accident by improperly loading the carrier's cargo. The *Decker* court applied the *Savage* rule and held that because the shipper's negligent loading was apparent, the shipper was not liable to the carrier.  However, the *Decker* court also noted:

> The situation would be markedly different in a case involving a party outside of the trucking industry. Pedestrians and non-commercial motorists, to name two possible third parties, injured in an accident caused by a shipper's negligent loading of cargo would still be able to sue that shipper for compensation despite the *Savage* rule. Shippers
> could not rely on *Savage* to bar claims from those not involved in the industry and who had no opportunity to remedy any negligence.

749 A.2d at 767.  As the owner of property affected by the Diazinon spill, Frazier clearly was not a party involved in the trucking industry and had no opportunity to ensure that the Diazinon was properly loaded on the trailer.  Consequently, the *Savage* rule is inapplicable to Frazier's negligence claim against Lesco, and Lesco is not entitled to summary judgment as to this claim.[2]

## II.  Whether Improper Loading was Apparent

Both the Plaintiffs and the Carrier Defendants oppose Lesco's motion for summary judgment as to these claims on the basis that a genuine issue of fact exists as to whether the alleged defect in

---

[2] We note that insomuch as Lesco was the shipper of the Diazinon and the Carrier Defendants were the carriers of the Diazinon, the Plaintiffs also appear to be third parties to the shipping relationship.  As such, the *Savage* rule would be inapplicable to their claims against Lesco as well, and Lesco's motion for summary judgment as to these claims should be denied on that basis.  However, the Plaintiffs do not so argue in their opposition brief.  Nevertheless, because we find that a genuine issue of fact exists as to whether Lesco's alleged improper loading was apparent, we will, on this basis, deny Lesco's motion for summary judgment.

Lesco's loading of the trailer was apparent.  We agree.  In *Franklin Stainless Corporation v. Marlo Transport Corporation*, 748 F.2d 865 (4th Cir. 1984) the shipper had been held liable to the victim of a traffic accident on a claim that the improper loading of heavy steel coils in a tractor trailer caused the accident.   The shipper loaded the coils down the center of the trailer without bracing or chocking to secure them. The shipper sought indemnity from the carrier under the *Savage* rule, arguing that its improper loading was apparent.   The Fourth Circuit noted that the shipper's loading of the coils down the center of the trailer was, of course, apparent to the carrier, but that it does not follow that the defect in this manner of loading was apparent.  Among the factors considered by the Fourth Circuit in determining that the defect was not apparent were: the driver of the truck had informed the shipper that he had never hauled steel coils before; the driver inquired as to whether the load was secure and was assured by the shipper that it was; and the shipper's traffic manager testified that in his opinion the shipment was loaded perfectly, with no observable danger whatsoever.  The Fourth Circuit held that the carrier's lack of knowledge about the defect in the loading and its reasonable reliance on the shipper's assurances that the load was secure precluded a finding that the defect was apparent.  *Id.* at 869-70.

In the case before this court, Cheek testified that he had never hauled the type of container in which the Diazinon was shipped.  Cheek also testified that he asked the Lesco employee loading the containers onto the trailer if the they should be secured from the sides and was told by the employee that the containers should not shift and no additional support was needed.   Cheek's testimony reveals that he had concerns about the lack of horizontal bracing to support the Diazinon containers but that he believed the Lesco employee who informed him the load was secure had loaded such containers before.   Moreover, Lesco's shipping supervisor testified that he told Cheek that, in

- 6 -

his opinion, the load was safe.  The record does not indicate, as Lesco contends, that Cheek called DBI/BSX multiple times to report concerns about whether the load was secure.  The record is replete with Cheek's expressions of uncertainty as to whether he voiced such a concern to DBI/BSX.  The record does indicate however, that Cheek attempted to secure the Diazinon containers with his own load straps.  While such action might indicate that Cheek did not rely on Lesco's assurances that the load was secure, considering the record as a whole, in a light most favorable to the Plaintiffs and the Carrier Defendants, we do not find evidence sufficient to warrant summary judgment.  The court cannot conclude as a matter of law that Cheek did not rely on Lesco's assurances that the load was secure.  Therefore, an issue of fact exists as to whether the alleged defect in Lesco's loading of the trailer was apparent. Accordingly, Lesco is not entitled to summary judgment as to the Plaintiffs' claims.

A separate order will be entered herein this date in accordance with this opinion.